UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PEDRO PARRA-SANCHEZ, ET AL. | CIVIL ACTION |
| VERSUS | NO. 07-5501 |
| ORLEANS PARISH CRIMINAL SHERIFF MARLIN N. GUSMAN, ET AL. | SECTION "N"  (5) |

## ORDER AND REASONS

This matter is before the Court on a motion, filed on behalf of Defendants Richard Stalder and Cornel Hubert, seeking dismissal of Plaintiffs' claims against them under 42 U.S.C. § 1983 and Louisiana state law, pursuant to FED. R. CIV. P. 12(b)(6).

### I. BACKGROUND

**A.    Facts**

The suit case arises from Plaintiff Pedro Parra-Sanchez's arrest on a New Orleans street corner after an altercation shortly after Hurricane Katrina, and his subsequent pre-trial incarceration. Parra-Sanchez came to New Orleans to work for a local contractor shortly after the hurricane. A week after Parra-Sanchez arrived, the contractor lost his contract to clear debris after being accused by a FEMA inspector of stealing a generator from a private residence. Apparently on the belief that Parra-Sanchez had informed on the contractor to FEMA, Plaintiff was fired by his employer on October 13, 2005. When Parra-Sanchez attempted that night to enter the home the contractor had rented for the crew to retrieve his personal possessions, he became involved in a physical altercation with his former colleagues that included him (allegedly in self-defense) slashing at them with a broken beer bottle.  New Orleans police were called and Plaintiff was arrested for aggravated battery

and disturbing the peace. Parra-Sanchez alleges that the arresting officers threw away evidence and committed other violations of his civil rights. The next day, he was taken before a criminal magistrate and his bond was set at $15,000. Parra-Sanchez then alleges that

> After his arrest, Plaintiff PEDRO PARRA-SANCHEZ was initially taken to "Camp Greyhound." From "Camp Greyhound" he was taken to Hunt Correctional Facility in St. Gabriel, Louisiana. From there he was sent to the St. Charles Correctional Center a.k.a Nelson Coleman Correctional Center in St. Charles Parish, Louisiana.

Amend. Compl. at ¶ 29 (Rec. Doc. 51). Parra-Sanchez does not indicate how long he was in any of these facilities, but the first documentary evidence of his whereabouts comes in a note he sent the warden of the St. Charles Correctional Center, a parish-run facility, in February 2006, indicating that he was in that facility by that time. *Id.* at ¶ 32. Parra-Sanchez made repeated requests to the warden at St. Charles to be brought to trial or to speak to an attorney, but allegedly through a series of administrative errors and oversights he was not brought to trial speedily, nor was his case otherwise adjudicated. Eventually, he would spend more than 400 days in custody before being released, without ever going to trial.

Among others, Parra-Sanchez sued Richard Stalder, Secretary of the Louisiana Department of Public Safety and Corrections, in his individual capacity, and also Cornel Hubert, Warden at Hunt, also in his individual capacity. Parra-Sanchez asserts claims pursuant to § 1983 for false imprisonment under the Fourteenth Amendment and violation of his Sixth Amendment right to a speedy trial against these Defendants. Parra-Sanchez, his wife, and child assert a claim against Defendants pursuant to § 1983 for deprivation of familial relationship under the First and Fourteenth Amendments. Parra-Sanchez also brings state law claims against Stalder and Hubert for false imprisonment, intentional infliction of emotional distress, and negligence, and his wife brings a claims for loss of consortium.

**B. Procedural History**

The procedural history of this case is noteworthy. Plaintiff filed the instant suit against multiple defendants including Stalder and Hubert on September 10, 2007. Defendants Stalder and Hubert filed their motion to dismiss on January 14, 2008, claiming qualified immunity from liability. *See* Rec. Doc. 37. Plaintiff filed his opposition on February 5, 2008, *see* Rec. Doc. 40, but in the meantime both sides agreed informally that Plaintiff needed to amend his complaint to correct his original allegation that the St. Charles Correctional Center was a state-run facility. *See* Opp. at 2 (Rec. Doc. 40). On the strength of this agreement, this Court denied the motion to dismiss without prejudice. *See* Rec. Doc. 42. Unfortunately, Plaintiff then failed to file an amended complaint, and Defendants again moved to dismiss by refiling the exact motion they had filed earlier. *See* Rec. Doc. 47. Plaintiff then refiled his earlier opposition, *see* Rec. Doc. 48, and also filed an explanation for his failure to amend his complaint, blaming a calendar error by his staff, *see* Rec. Doc. 49. Once again, the Court dismissed the motion without prejudice, ordered the Plaintiff to file an amended complaint, and instructed the Defendants that

> If an Amended Complaint is filed and Defendants still have issues with it, a third Motion to Dismiss may be filed that is tailored to the Amended Complaint. If Plaintiffs do not timely file an Amended Complaint, Defendants may file a Motion for Leave to Reset the Second Motion to Dismiss for Immediate Hearing.

*See* Order of May 7, 2008 (Rec. Doc. 50). Plaintiff filed his amended complaint. *See* Rec. Doc. 51. Defendants, noting that Plaintiffs' amendments were minimal, simply moved to reopen their earlier second motion to dismiss. *See* Rec. Doc. 52. The point to take away from this comedy of errors is that Plaintiff has had two opportunities to mold his complaint and opposition in response to the qualified immunity defense raised by Defendants.

## II. ANALYSIS

3

**B.     Standard of Review on a 12(b)(6) Motion**

A district court cannot dismiss a complaint, or any part of it, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). In assessing the complaint, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowry v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir.1997). "However, '[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . .'" *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989)) (alteration in original). "'[C]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss." *Id.* (quoting *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir.1994)). Moreover, "'legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Blackburn*, 42 F.3d at 931 (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993)). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1995) (internal quotation and citation omitted).

**B.     Standard of Review and Pleading in § 1983 Cases**

Stadler and Hubert move to dismiss plaintiff's § 1983 claims brought against them in their personal capacities on the ground that they are entitled to qualified immunity. In *Harlow v. Fitzgerald*, the United States Supreme Court established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (citation omitted). Because qualified immunity constitutes an immunity from a lawsuit, rather than a mere defense to liability, the defense is intended to give public officials immunity from disruptive and burdensome pretrial matters such as discovery. *Id.* Therefore, adjudication of qualified immunity claims should occur "'at the earliest possible state in litigation.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A claim of qualified immunity requires this Court to engage in a well-established two-step inquiry:

> First, we must determine whether a public official's conduct deprived a § 1983 plaintiff of a "clearly established" constitutional or statutory right. The constitutional right must be sufficiently clear to put a reasonable [public official] on notice that certain conduct violates that right. The Supreme Court has warned against vague or general assertions of constitutional rights and has required a § 1983 plaintiff to state with specificity the constitutional right that has been allegedly violated–otherwise, liability could be imposed in every case.
> . . .
> Second, a public official may successfully assert the defense of qualified immunity even though the official violates a person's civil rights, provided the official's conduct was objectively reasonable. Whether an official's conduct is objectively reasonable depends upon the circumstances confronting the official as well as clearly established law in effect at the time of the official's actions. The subjective intent of the public official is irrelevant, and the official's knowledge

5

of the relevant law need not rise to the level of a constitutional scholar.

*Sanchez v. Swyden*, 139 F.3d 464, 466-67 (5th Cir.1998). The Fifth Circuit has determined that when a plaintiff sues a public official pursuant to § 1983, a district court must insist on a "heightened pleading" by the plaintiff. *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir.1999); *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir.1996). First, a plaintiff must file "a short and plain statement of his complaint, a complaint that rests on more than conclusions alone." *Id.* (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995)). Second, "the court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity." *Schultea*, 47 F.3d at 1434. Defining the contours of the procedure in qualified immunity cases, the Fifth Circuit stated:

> Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist. The district court may ban discovery at this threshold pleading stage and may limit any necessary discovery to the defense of qualified immunity. The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts. Even if such limited discovery is allowed, at its end, the court can again determine whether the case can proceed and consider any motions for summary judgment under Rule 56.

*Id.* at 1434. A reply to an assertion of qualified immunity must contain "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes*, 168 F.3d at 161. Additionally, a reply to a defendant's assertion of qualified immunity must "fairly engage its allegations." *Schultea*, 47 F.3d at 1433. Procedurally, the *Schultea* reply to a defendant's assertion of qualified immunity is grounded in FED. R. CIV. P. 7, which allows a court to order a reply to an answer affirmatively pleading the defense of qualified immunity. *Id.*

at 1433.

### C.     Plaintiff's Argument Regarding *Schultea*

In the instant case, there has been no answer, such that the Court could *sua sponte* order a reply tailored to the assertion of qualified immunity. Nor has there been a Rule 12 motion for a more definite statement. Plaintiff argues that this Court cannot grant Defendants' motion at this point, since the Court has not yet "Ordered Plaintiffs to 'file a reply tailored to an answer pleading the defense of qualified immunity.'" Opp. At 5 (Rec. Doc. 48). But *Schultea* does not require a district court to allow endless exchanges of paper, unmoored from any particular procedural posture. *Schultea* encourages–and nearly requires–a district court to order a Plaintiff to reply to an answer that asserts a qualified immunity defense. This order is sparked by a specific event–the filing of an answer–and is not a generalized instruction to give plaintiffs as many passes as they need to get the job done. While the Court's discretion in this area may be "narrow," nonetheless there *is* discretion to decide a motion to dismiss on the grounds of qualified immunity even without a further statement from Plaintiff, filed through whatever procedural vehicle.

The Court concludes that such discretion is properly employed in this case, given its strange procedural history. Plaintiff had the opportunity to file both his amended complaint and his opposition after having seen the motion to dismiss, and thus could have provided the Court with specific facts answering the arguments in the motion that would meet the "heightened" pleading requirements of a Section 1983 claim. In fact, Plaintiff had the opportunity to do this *twice*. This Court is no longer willing to provide him opportunities to plead and re-plead until such time as he "stumble[s] upon a formula that carries [him] over the threshold. . . . At some

point a court must decide that a plaintiff has had a fair opportunity to make his case." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Plaintiff has had his fair opportunity, and this Court will now proceed to rule upon the pleadings.

**D.     Plaintiff's § 1983 Claims**

In his opposition, Plaintiff argues that he has asserted viable § 1983 legal theories against the defendants, in that all of the rights that he alleges the Defendants violated were clearly established at the time of his arrest and incarceration. Plaintiff misstates the inquiry. Rather, to survive a 12(b)(6) motion to dismiss a § 1983 claim, Plaintiff is required to plead specific factual allegations regarding Defendants' *conduct* that allegedly violates those clearly established rights. *Reyes*, 168 F.3d at 161. Despite two opportunities to do so, Plaintiff has utterly failed in this task as concerns these two Defendants. Plaintiff has never clarified how long he spent in the Hunt facility, which is essential to establishing whether these particular Defendants violated his Fourteenth Amendment right against false imprisonment through a prolonged detention. *See Baker v. McCollan*, 443 U.S. 137, 144-45 (1979) (constitutional violation to detain defendant indefinitely in the face of repeated protests of innocence, even despite valid arrest). Plaintiff has failed to show any conduct at all by Stadler and Hubert that is relevant to his claim for false arrest. And even assuming that a substantive due process right to familial relationship is clearly established in this Circuit, Plaintiff has again failed to show that these Defendants unlawfully detained him for such a period of time as to violate that right. *See Morris v. Dearborne*, 181 F.3d 657 (5th Cir. 1999) (constitutional violation when teacher's fabrication of sexual abuse caused separation of family for three years). In any § 1983 claim, this Court is required to "excuse mere artless drafting and to overlook superfluous argument in the interest of locating the substance of

the pleader's claim." *Jamieson by and through Jamieson v. Shaw*, 772 F.2d 1205, 1209 (5th Cir.1985). But this Court cannot overlook Plaintiff's total failure to allege any facts that might support his claim for relief.

### E.     Plaintiff's State Law Claims

Plaintiff alleges two intentional torts–false imprisonment and intentional infliction of emotional distress–and negligence, apparently in the alternative. His wife also alleges loss of consortium, which is a harm to or deprivation of a relational interest caused by another's tortious conduct. *See* LA. CIV. CODE art. 2315(B). Thus, the loss of consortium claim will not survive if this Court concludes that Plaintiff's other state law claims do not survive.

Plaintiff's claims for the two intentional torts are easily dismissed. Plaintiff has not alleged *any* conduct by the Defendants that shows they intended his false imprisonment, or intended to cause him emotional distress, or engaged in conduct that was reckless as to those two possibilities.

Counsel for both parties expend a great deal of paper on the negligence claim, with Defendants arguing that various Louisiana statutes and executive orders in place at the time of Hurricane Katrina authorized their detention of Parra-Sanchez, while Plaintiff argues that Defendants are liable on a respondeat superior theory for the actions of their employees. These arguments entirely skip over the fundamental inquiry of any negligence claim, which is: Did Defendant breach some duty owed to Plaintiff? To the extent that Plaintiff pleads any duty owed him, he seems to suggest that Stadler and Hubert breached a duty to investigate whether his arrest and incarceration were valid. *See* Amend. Compl. at ¶ 84. The Court is unable to find any authority for such a theory of recovery in Louisiana state law. And the Court is not inclined to

embrace such a theory of recovery, especially in a case where the Plaintiff went before the magistrate for a bond hearing and where Plaintiff cannot plead with particularity how long he was in the Defendants' custody.

Because the Court concludes that the two intentional tort claims and the negligence claim must be dismissed, it also concludes that the claim for loss of consortium fails as well.

### III. CONCLUSION

Based on the foregoing, the **Motion to Dismiss by Defendants Richard Stalder and Cornel Hubert (Rec. Doc. 47)** is hereby **GRANTED**, and all claims against these two Defendants are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 15th day of October, 2008.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**